FILED

08 APR -8 PM 3:53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                July 2007 Grand Jury '08 CR 1 0 92 ---- JAH

11    UNITED STATES OF AMERICA,        )    Criminal Case No. _____
                                       )
12              Plaintiff,             )    INDICTMENT
                                       )
13         v.                          )    Title 18, U.S.C., Sec. 371 - Conspiracy;
                                       )    Title 21, U.S.C., Secs. 331(a), 351 and
14    JAMES FOLSOM,                    )    333(a)(2) - Introduction of Adulterated Device
         aka Jim Anderson,             )    into Interstate Commerce; Title 21,
15                                     )    U.S.C., Secs. 331(a), 352, 360 and 333(a)(2) -
              Defendant.               )    Introduction of Misbranded Device into Interstate
16                                     )    Commerce; Title 21, U.S.C.,
                                       )    Secs. 331(p), 360, and 333(a)(2) - Failure to
17                                     )    Register Device Establishment; Title 18, U.S.C.,
                                       )    Sec. 2 - Aiding and Abetting; Title 18, U.S.C.,
18                                     )    Sec. 3147 - Commission of Offense While on
                                       )    Pretrial Release
19    _____)

20         The grand jury charges:

21                         Introductory Allegations

22         1.    The United States Food and Drug Administration ("FDA") is the agency responsible for

23    protecting the health and safety of the public by ensuring, among other things, that devices intended for

24    use in the treatment of humans are safe and effective for their intended uses and that the labeling of such

25    devices bears true and accurate information.  Pursuant to its statutory mandate, the FDA regulates the

26    manufacture, labeling, and shipment in interstate commerce of any devices designed, intended or applied

27    for use in the treatment of humans.

28    //

MKP:nlv:San Diego
4/7/08

1    2.    The Food, Drug and Cosmetic Act, 21 U.S.C., Sec. 301 et. seq., governs devices intended

2  for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention

3  of disease in man or other animals.  Under the Food, Drug and Cosmetic Act, in order to legally market

4  a device after May 28, 1976, premarket approval from FDA is required or the device must be deemed

5  by the FDA to be substantially equivalent to a previously lawfully marketed device.

6    3.    The purpose of the premarket approval process is to allow the FDA to determine that

7  the device is safe and effective under the conditions of use recommended in the proposed labeling.  An

8  application for premarket approval must contain information about the device, including its intended use,

9  a description of how the device functions and its physical and performance characteristics, a summary

10 of any animal and human clinical studies conducted with the device and an explanation of how the data

11 and information in the application constitutes valid scientific evidence of the safety and effectiveness

12 of the device.

13    4.    A manufacturer seeking to market a device believed to be substantially equivalent to a

14 legally marketed predicate device must submit to the FDA a premarket notification submission, which

15 includes the device name, the establishment registration number of the device owner, the classification

16 of the device, proposed labeling, advertising, and engineering drawings and data to support the premise

17 that the device is substantially similar to another lawfully marketed device.  Upon review of this

18 submission, the FDA will clear the device for commercial distribution, once it is satisfied that the device

19 is substantially similar to the predicate device and safe for its intended use.

20    5.    In order to encourage, to the extent consistent with the protection of public health and

21 safety, the discovery and development of useful devices intended for human use, and to maintain

22 optimum freedom for scientific investigators in their pursuit of such endeavors, an approved

23 investigational device exemption generally permits a device that would otherwise be required to comply

24 with the premarket approval process to be shipped lawfully in interstate commerce for the purpose of

25 conducting investigations of that device.

26 //

27 //

28 //

2

1      6.      Anyone shipping a device under an investigational device exemption must comply with

2    record-keeping and reporting requirements for the purpose of later demonstrating the safety and

3    effectiveness of the device over the course of the clinical trial being conducted.   No sponsor of an

4    investigational device, investigator, or anyone acting on their behalf is permitted to promote or test

5    market the device until after the FDA has approved the device for commercial distribution.  Such

6    persons are also prohibited from commercializing an investigational device by charging the subjects or

7    investigators a price larger than that necessary to recover costs of manufacture, research, development

8    and handling.  All investigational devices are required to bear a label which states "CAUTION -

9    Investigational device.  Limited by United States law to investigational use."

10      7.      At all times relevant herein, defendant JAMES FOLSOM, aka Jim Anderson, sold

11    biofrequency devices consisting of a micro-current frequency generator with a digital readout, two

12    stainless steel cylinders, two personal application plates with connectors and lead wire connecting the

13    device to the cylinders and plates. Users are provided with an operating manual that sets forth hundreds

14    of digital settings for the device, directed to specific conditions from abdominal pain, AIDS, diabetes,

15    stroke, ulcer to worms.  Users are advised to connect the cylinders or plates to the machine, and touch

16    them to the body for a recommended run time to treat each condition.

17      8.      At no time relevant herein did defendant JAMES FOLSOM, aka Jim Anderson, possess

18    or seek from the FDA an approved application for premarket approval, clearance to market as a

19    substantially equivalent device or an investigational device exemption for the biofrequency devices he

20    marketed.

21                                      Count 1

22      The Introductory Allegations set forth above in paragraphs 1-8 are incorporated herein as if set

23    forth in full.

24      Between at a date unknown to the grand jury but at least as early as 1997, and up to and including

25    on or about March 18, 2008, within the Southern District of California, defendant JAMES FOLSOM,

26    aka Jim Anderson, did conspire with Gabino Palafox (charged elsewhere) and others, known and

27    unknown to the grand jury, to commit offenses against the United States, to wit:

28    //

3

a.    To introduce and deliver for introduction into interstate commerce, with intent to defraud and mislead, a device that is adulterated, in violation of Title 21, United States Code, Sections 331(a), 351 and 333(a)(2) and Title 18, United States Code, Section 2;

b.    To introduce and deliver for introduction into interstate commerce, with intent to defraud and mislead, a device that is misbranded, in violation of Title 21, United States Code, Sections 331(a), 352, 360 and 333(a)(2) and Title 18, United States Code, Section 2; and

c.    To fail to register in accordance with Section 360, with intent to defraud and mislead, an establishment in a state engaged in the manufacture, preparation, propagation or processing of a device, in violation of Title 21, United States Code, Sections 331(p), 360 and 333(a)(2).

It was a method and means of the conspiracy that the defendant and others operated a business selling over $2.5 million worth of biofrequency devices intended to treat hundreds of different physical conditions in humans. The defendant sold thousands of these devices to customers for prices ranging from $1030 to $1995 per device, using various business names, including AstroPulse, NatureTronics, BioSolutions, Services Support, Wave Systems and Global Wellness. The defendant and other conspirators shipped the devices to buyers throughout the United States using the U.S. Postal Service and other private commercial interstate carriers.

It was a further method and means of the conspiracy that the defendant and others manufactured these devices at various locations in Southern California, including the garage of the defendant's residence in San Diego, at a cost of approximately $325 per device.

It was a further method and means of the conspiracy that the defendant, knowing that the device was not approved by the FDA for marketing for the treatment of humans, falsely advised that the device could be lawfully sold and used for investigation, experimentation and research.

It was a further method and means of the conspiracy that the defendant, in order to avoid detection by the FDA, used the false name of "Jim Anderson" when conversing with potential customers, and did not register his establishment with the FDA, did not label the devices with his place of business, and shipped the devices to customers in unmarked white boxes.

//

//

//

//

4

OVERT ACTS

In furtherance of said conspiracy and in order to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere.

1.     On or about November 30, 2003, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Castle Rock, Colorado.

2.     On or about June 10, 2004, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Wakeman, Ohio.

3.     On or about February 2, 2005, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Paynesville, Minnesota.

4.     On or about November 16, 2006, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Millstone Township, New Jersey.

5.     On or about July 24, 2007, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Wickenburg, Arizona.

6.     On or about January 30, 2008, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Black Hawk, South Dakota.

7.     On or about February 22, 2008, in San Diego, defendant JAMES FOLSOM caused a biofrequency device be shipped to a buyer in Reading, Pennsylvania.

All in violation of Title 18, United States Code, Section 371.

Counts 2-8

The Introductory Allegations set forth above in paragraphs 1-8 are incorporated herein as if set forth in full.

On or about the dates set forth below in Column A, within the Southern District of California, defendant JAMES FOLSOM, aka Jim Anderson, did, with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce and cause to be introduced and delivered for introduction into interstate commerce, a device that was adulterated, within the meaning of 21 U.S.C., Sec. 351(f)(1), in that the device lacked an approved application for premarket approval, and within the meaning of 21 U.S.C., Sec. 351(e)(1) and 21 CFR 898.12, in that the device failed to comply with a performance standard established under Section 360d,

| Count | Column A (date) |
|-------|-----------------|
| 2 | November 30, 2003 |
| 3 | June 10, 2004 |
| 4 | February 2, 2005 |
| 5 | November 16, 2006 |
| 6 | July 24, 2007 |
| 7 | January 30, 2008 |
| 8 | February 22, 2008 |

All in violation of Title 21, United States Code, Sections 331(a), and 333(a)(2) and Title 18, United States Code, Section 2.

Counts 9-15

The Introductory Allegations set forth above in paragraphs 1-8 are incorporated herein as if set forth in full.

On or about the dates set forth below in Column A, within the Southern District of California, defendant JAMES FOLSOM, aka Jim Anderson, did, with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce and cause to be introduced and delivered for introduction into interstate commerce, a device that was misbranded, within the meaning of 21 U.S.C., Sec. 352(b), in that the device lacked a label containing the name and place of business of the manufacturer, packer or distributors, and within the meaning of 21 U.S.C., Secs. 352(o) and 360(j), because the device was manufactured in an establishment in a State not duly registered with the FDA, and within the meaning of 21 U.S.C., Secs. 352(o), 360(k) and 21 CFR 807.81, because the device lacked premarket notification,

| Count | Column A (date) |
|-------|-----------------|
| 9 | November 30, 2003 |
| 10 | June 10, 2004 |
| 11 | February 2, 2005 |
| 12 | November 16, 2006 |

//

| Count | Column A (date) |
|-------|-----------------|
| 13 | July 24, 2007 |
| 14 | January 30, 2008 |
| 15 | February 22, 2008 |

All in violation of Title 21, United States Code, Sections 331(a), and 333(a)(2) and Title 18, United States Code, Section 2.

## Counts 16-20

The Introductory Allegations set forth above in paragraphs 1-8 are incorporated herein as if set forth in full.

By on or about the dates set forth below in Column A, within the Southern District of California, defendant JAMES FOLSOM, aka Jim Anderson, did, with intent to defraud and mislead, operate an establishment in the garage of his residence in San Diego at which the defendant engaged in the manufacture, preparation, propagation and processing of a device , and which establishment the defendant failed to register with the FDA, as required by 21 U.S.C., Sec. 360,

| Count | Column A (date) |
|-------|-----------------|
| 16 | December 31, 2003 |
| 17 | December 31, 2004 |
| 18 | December 31, 2005 |
| 19 | December 31, 2006 |
| 20 | December 31, 2007 |

All in violation of Title 21, United States Code, Sections 331(p), 360 and 333(a)(2).

//
//
//
//
//
//
//

7

1

<u>Pretrial Release Allegations</u>

2  It is further alleged that defendant JAMES FOLSOM, aka Jim Anderson, committed the offenses

3  charged in Counts 7, 8, 14, 15 and 20 while he was on pretrial release for misdemeanor charges in

4  Criminal Case No. 07CR2852-JAH, and therefore is subject to an enhanced penalty of not more than

5  one year of imprisonment per count, pursuant to Title 18, United States Code, Section 3147.

6  DATED: April 8, 2008.

7

A TRUE BILL:

8

9

10  _____
   Foreperson

11  KAREN P. HEWITT
   United States Attorney

12

13  By: _____

14  MELANIE K. PIERSON
   Assistant U.S. Attorney

15

16

17

18

19

20

21

22

23

24

25

26

27

28