KAREN P. HEWITT
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California State Bar No. 112520
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5685/(619) 557-7055(Fax)
Email: Melanie.Pierson@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR1092-JAH |
|---|---|
| Plaintiff, | ) DATE: September 29, 2008 |
| | ) TIME: 9:00 a.m. |
| v. | ) |
| | ) STATEMENT OF THE CASE, |
| JAMES FOLSOM, | ) STATEMENT OF FACTS, AND |
| | ) MEMORANDUM OF POINTS AND |
| Defendant. | ) AUTHORITIES IN SUPPORT OF |
| | ) GOVERNMENT'S MOTION TO |
| | ) REVOKE BOND FOR VIOLATION |
| | ) OF CONDITIONS OF RELEASE |
| _____ | ) |

I

STATEMENT OF THE CASE

On October 15, 2007, a misdemeanor Information was filed in Criminal Case No. 07CR2852-JAH, charging defendants James Folsom and Gabino Palafox with Conspiracy, in violation of Title 18, United States Code, Section 371, and Introduction into Interstate Commerce of Unapproved Medical Devices, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1) and 351(f). Defendant Folsom appeared with counsel pursuant to a Notice to Appear and posted a $10,000 personal security bond. The conditions of release required that he violate no laws, federal, state or local. (See bond, attached hereto as Exhibit 1, filed separately under seal.)

//

//

//

1    On April 8, 2008, a federal grand jury charged defendant James Folsom in Criminal Case 08CR109-JAH with twenty felony charges including one count of Conspiracy, in violation of Title 18, United States Code, Section 371; seven counts of Introduction of an Adulterated Device into Interstate Commerce, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2) and 351(e) and (f); seven counts of Introduction of a Misbranded Device into Interstate Commerce, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 352(o), 352(b), and 360(j) and (k); five counts of Failure to Register a Device Establishment, in violation of Title 21, United States Code, Sections 331(p), 333(a)(2), and 360; and with the Commission of an Offense While on Pretrial Release, in violation of Title 18, United States Code, Section 3147.

On April 11, 2008, defendant Folsom was arraigned on this Indictment and the Information in Criminal Case 07CR2852-JAH was dismissed. The bond posted for the prior case was transferred to the current case. At the hearing, the Government raised concerns about the fact that the defendant was continuing to sell his unapproved medical device, even while on bond on the misdemeanor charges. The court modified the conditions of release to include a condition that "the defendant not possess, distribute sell the devices" as a condition of his bond. (Transcript of hearing on April 11, 2008, p.11.)

Defense counsel protested that such a condition would "bankrupt [the defendant] because this is what he lives on." (Transcript of hearing on April 11, 2008, p. 12.) The court responded by offering to speed the timetable in which the case would be brought to trial. Since that time, the case has been delayed at the request of the defense and a second attorney, in addition to original counsel, has been retained, although the defendant has no known employment.

The Government herein requests that the court revoke the defendant's bond and remand him to custody because he has continued to distribute and sell the devices, in violation of the court's specific condition of pretrial release.

//
//
//
//
//

2

II

STATEMENT OF FACTS

James Folsom makes his living selling a Rife-style[1] biofrequency device not approved by the United States Food and Drug Administration (FDA). Folsom manufactured the devices in his garage and shipped them to customers throughout the United States. The device itself (as sold by defendant Folsom) consists of a small box which plugs into the wall, which has a digital readout and a keypad. The device also has two ports into which plugs attached to metal plates or metal cylinders can be inserted. Using the keypad, the user is instructed to punch in the number for the frequency for the condition they wish to treat, for example, 100 to treat AIDS, or 102 for diabetes, or 205 for cancer. The plates or cylinders are placed on the body part in question, allowing the electronic frequencies to pass through the body. Folsom sold this device, which costs about $350 to manufacture, for $1,500-$2,000.

The FDA reviewed the devices and their literature and analyzed the operation of the devices themselves. The FDA determined that even though the literature included disclaimers, the machines were nonetheless medical devices within the meaning of the Food, Drug and Cosmetic Act. The FDA further determined that an approved application for investigational device exemption would be required if a Rife instrument was intended for clinical investigations with human subjects. The FDA further determined that an approved application for premarket approval would be required before a Rife instrument can be commercially distributed for the cure, mitigation, treatment or prevention of disease in humans because the device has not be determined by the FDA to be substantially equivalent to a medical device legally in commercial distribution in the United States on or before May 28, 1976, when the Medical Device Amendments of 1976 were added. The manuals themselves state that "in order to reduce cost, FDA approval has not been applied for." They announce that "No intent is made to diagnose, treat, cure or prevent any disease, disorder, pain, injury, deformity or physical or mental condition" and "This manual is for frequency instrument investigation, research and experimental use only."

---

[1] In the 1950's, a now deceased scientist in San Diego named Royal Raymond Rife invented a device he claimed could cure all diseases by using harmonic frequencies to cause cell walls to shatter.

3

A search of FDA records revealed no approved applications for premarket approval, no investigational device exemptions and no premarket notifications (of substantial equivalence) for any Rife instrument, and no registration of the company or its manufacturing facility. Moreover, there was no record of any application for premarket approval, premarket notification, or investigational device exemption for Folsom or the companies with which he is associated (Astropulse, NatureTronics, BioSolutions, Global Wellness, Energy Wellness, Wave Systems). The FDA deemed the devices to be adulterated because they were class III devices and did not possess an approved application for premarket approval or for investigational device exemption. The FDA further deemed the devices to be misbranded because notice and information required by the FDA were not provided.

The analysts determined that the devices would never gain FDA approval in their current form because the cables that connect the plates and cylinders to the devices (and thereby connect the device to the patient) are capable of being plugged directly into an ordinary wall socket, in violation of a specific FDA regulation establishing performance standards for patient cables intended for use with medical devices. 21 C.F.R. § 898.12. Such devices are deemed unsafe and cannot be approved in such form.

In June, 2008, the FDA came across an advertisement offering for sale one of the devices marketed by Folsom in an alternative health publication. The seller of those devices, formerly Folsom's largest distributor, advised agents that he believed he was now receiving the devices "direct from the factory," rather than from Folsom. The distributor advised that he telephoned or faxed his orders to a phone number in Palmdale, California, (subscribed by an individual to whom Folsom had shipped product in the past). The distributor stated that the return postmark on the boxes was from San Diego, or Chula Vista. The distributor advised that his checks for the devices were made payable to "Dominion Alliance." Some of the checks had "donation" typed in the memo section. Between April 28, 2008 and June 13, 2008, this distributor paid $67,000 to Dominion Alliance for the devices. (See Exhibit 2, filed separately under seal.) On one of the faxes sent to Palmdale to place an order for six devices, the distributor added a handwritten note to "Jim" to send two replacement units for ones on which the liquid crystal display had stopped functioning. (See Exhibit 3, filed separately under seal.)

Dominion Alliance, according to the individual in Palmdale to whom the fax was sent, is a non-profit humanitarian organization operated by that individual and his wife. The bank records reveal that from May 1, 2008, through June 18, 2008, Dominion Alliance paid $5,000 to Rosemont Mission (see Exhibit 4, filed separately under seal), and $26,000 to the brother of Gabino Palafox, Folsom's former partner in the device business (see Exhibit 5, filed separately under seal). In the memo section of all of the checks was written the words "gift/donation/Legal Defense Fund."

Rosemont Mission is an organization formed by Folsom and his wife, after federal agents searched his home and seized the devices, and his attorney met with the Government and learned that the Government was considering potential charges against Folsom that could result in the forfeiture of his home. Folsom's residence is now owned by Rosemont Mission, and Folsom and his wife are the sole signatories on the Rosemont Mission bank accounts.

Checks to Rosemont Mission after April 12, 2008, were written by another former major distributor of Folsom's devices in Reading, Pennsylvania, (see check attached hereto as Exhibit 6, filed separately under seal), as well as by an individual in Florida (see check attached hereto as Exhibit 7, filed separately under seal), and an individual in Wisconsin (see check attached hereto as Exhibit 8, filed separately under seal). The distributor in Pennsylvania advised that sometime in 2005, Folsom requested that all checks for payment of devices be made payable to "Rosemont Mission" instead of BioSolutions. In May of 2008, Folsom requested that he write "donation" in the memo section of the checks he sent to Rosemont Mission. The distributor prepared his own purchase orders for the devices, which correspond with each of the checks written to Rosemont Mission. (See purchase orders, attached hereto as Exhibit 9, filed separately under seal.) In 2008, this distributor has sent over $50,000 to Rosemont Mission in payment for devices. (See checks attached hereto as Exhibit 10, filed separately under seal.)

Also in about May of 2008, this same distributor was contacted by a woman named "Marisol" who stated that she would ship him devices as a "gift." The distributor spoke to Folsom about this, and Folsom told him that if he felt obligated, he could pay Rosemont Mission for the devices but that he was not required to do so. The distributor received 32 devices from Marisol in May, 2008. He later received eight devices in June with the return address of 2260 El Cajon Boulevard, Box 903, San Diego,

California, and eight more devices with the return address of 374 East H Street, Box 419, Chula Vista, California. (See mailing labels, attached hereto as Exhibit 11, filed separately under seal.) These postal mail boxes were opened by Gabino Palafox and his brother. (See Exhibit 12, filed separately under seal.) This distributor sent checks in payment for these devices made payable to Rosemont Mission to Folsom's home address.

The individual in Florida advised that he has been ordering devices from Folsom since the mid 1990's. The individual from Florida has always mailed his checks for payment to 2260 El Cajon Boulevard, #903, and continues to do so to this day. After May 2008, Folsom told him that his business name was changing to Rosemont Mission, at the same address. Folsom said he would continue to ship devices to him and if he felt obligated to send funds in return, he should make them payable to Rosemont Mission and "donation" should be written in the memo section. This individual's check, attached hereto as Exhibit 7, filed separately under seal) has "donation (2 + 2)" written in the memo section. The check writer said the "2 + 2" referred to two devices and two crystal generators (an accessory) for which he was sending payment.

The individual in Wisconsin advised that in May 2008, he contacted Jim Folsom by telephone and ordered a device. His check in payment for the device, payable to Rosemont Mission (attached as Exhibit 8, filed separately under seal), has "donation" written in the memo section. This individual advised that he does not know what Rosemont Mission is but understands they do good deeds for poor people, and provide frequency generators for people.

Another Folsom distributor located in Georgia, advised that Folsom recently requested that some of the checks for the devices he received from Folsom be made payable to "Dominion Alliance" and "Alfonso Palafox" (see Exhibit 13, filed separately under seal). The Georgia distributor mailed all the checks to Folsom's residence on Promesa Drive in San Diego.

//
//
//
//
//

III

MEMORANDUM OF POINTS AND AUTHORITIES

DEFENDANT'S BOND SHOULD BE REVOKED BECAUSE HE HAS VIOLATED THE CONDITIONS OF HIS RELEASE BY CONTINUING TO VIOLATE THE LAW

Pursuant to Rule 46(f)(1) of the Federal Rules of Criminal Procedure, "[T]he court must declare the bail forfeited if a condition of the bond is breached." The forfeiture is mandatory. United States v. Nguyen, 279 F.3d 1112, 1115 (9th Cir. 2002). Forfeiture of bond is the appropriate remedy for violations of conditions of release. United States v. Vaccaro, 51 F.3d 189, 192-193 (9th Cir. 1995). Such forfeitures have been upheld, for example, for violations of conditions for drug use, travel restrictions and "break no laws" conditions. Id. Pursuant to 18 U.S.C. § 3148(b), the court

> shall enter an order of revocation [of pretrial release bond] and detention if, after a hearing, the judicial officer (1) finds there is (A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and (2) finds that (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

Alternatively, the court may "commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release." 18 U.S.C. § 3148(c).

By continuing to ship the unapproved medical devices in interstate commerce (as demonstrated by the attached exhibits), the defendant has both committed a federal crime while on release and violated a condition of release. The court is therefore required to order the forfeiture of the defendant's bail. United States v. Nguyen, 279 F. 3d 1112, 1115 (9th Cir. 2002).

1.     The Defendant Is Clearly Unlikely to Abide by Any Conditions of Release

The defendant has demonstrated, twice over, that he is unable to abide by the standard condition of release requiring that he violate no laws, federal, state or local. Although this standard condition of release was imposed by Magistrate Porter when bond was initially set on October 30, 2007, the defendant continued to market the unapproved devices. This conduct resulted in additional charges and sentencing enhancements filed in the current indictment. The return of an indictment establishes

//

probable cause that the defendant has committed an offense. <u>United States v. Austin</u>, 408 F.2d 808, 810 (9th Cir. 1969).

In spite of the additional charges and the sentencing enhancement, the defendant continued to distribute the devices in interstate commerce. The Government brought this to the attention of this court in April 2008, and the court imposed a specific condition prohibiting the defendant from possessing, selling or distributing the devices at issue in this case. The imposition of this condition was fought strenuously by the defense at the time.

In spite of both the general condition imposed by Magistrate Porter, the specific condition imposed by this court, and the court's specific admonition to the defendant, Mr. Folsom has continued to distribute the devices, engaging in great subterfuge in an effort to deceive the court and the Government. He has requested that payments be made in the name of other persons and entities (Rosemont Mission, the brother of Gabino Palafox, Dominion Alliance), and that payments be disguised as "donations" and payments for "legal defense." He has requested that orders be faxed to others, who would forward the information to Folsom. Shipping also was handled by others in an effort to insulate Folsom. As a result of the defendant's post-arrest conduct in this regard, he has established clearly and convincingly that he is unable to abide by any conditions of release and must be remanded to custody.

### 2. The Defendant Poses a Danger to the Community

The defendant's continued sales of this unapproved medical device pose a danger to the community, in that customers may choose to substitute this unapproved device (which has never been subjected to clinical trials) for the course of therapy for their disease or physical condition prescribed by their physician. The danger posed to the community may encompass the possibility of economic harm, as well as the possibility of physical harm. <u>United States v. Reynolds</u>, 956 F.2d 192 (9th Cir. 1992). "Often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant." <u>United States v. Harris</u>, 920 F. Supp. 132, 133 (D. Nev. 1996). The defendant is selling his medical devices for the retail price of $1,995 apiece, without conducting the clinical trials and establishing their efficacy to obtain FDA approval, thus posing an economic as well as a physical danger to the community.

Moreover, without active employment, the defendant's impetus to remain is significantly lessened. The absence of steady and meaningful employment is a factor that points to more restrictive conditions, United States v. Smith, 87 F.R.D. § 693, 702 (E.D. Cal. 1980), aff'd, 734 F.2d 22 (9th Cir. 1984), in this case towards detention.

## IV

## CONCLUSION

On the basis of the foregoing, the Government respectfully requests that Defendant's bond be forfeited, and he be ordered detained and remanded to custody for the remainder of the proceedings in this case.

DATED: September 8, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Melanie K. Pierson
MELANIE K. PIERSON
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Melanie.Pierson@usdoj.gov